**BRIDGEPORT MUSIC, INC.,**
Plaintiff–Appellant (03–5004),
Plaintiff–Appellee (03–5739),

Southfield Music, Inc., Plaintiff,

v.

DJ YELLA MUZICK; Songs of Universal, Inc.; Defendants–Appellees (03–5004), Defendants–Appellants (03–5739),

Kidco Music; Koke is it Muzik; all Nations Music Publishing d/b/a all Nations Music and Songs of all Nations, Defendants.

Nos. 03–5004, 03–5739.

United States Court of Appeals, Sixth Circuit.

May 26, 2004.

Richard S. Busch, D'Lesli M. Davis, Jeannine Huber, King & Ballow, Nashville, TN, for Plaintiff–Appellant.

Philip M. Kirkpatrick, Stewart, Estes & Donnell, Nashville, TN, Russell J. Frackman, Jeffrey D. Goldman, Marc E. Mayer, Mitchell, Silberberg & Knupp, Los Angeles, CA, for Defendants–Appellees.

Before GUY and GILMAN, Circuit Judges; and BARZILAY, Judge.*

---

* The Honorable Judith M. Barzilay, Judge, United States Court of International Trade, sitting by designation.

RALPH B. GUY, JR., Circuit Judge.

Plaintiff, Bridgeport Music, appeals from the grant of summary judgment in favor of defendants, DJ Yella Muzick (Yella Muzick) and Songs of Universal, on its claims of copyright infringement. Specifically, Bridgeport claims its copyright interest in the musical composition "Eazy–Duz–It" was infringed by use of a sample from "Eazy–Duz–It" in the new composition "4 Tha E." The district court found the claims were barred by a prior license. Bridgeport argues that there were genuine issues of material fact concerning the validity, existence, and scope of the license. In addition, Yella Muzick and Songs of Universal appeal separately from the post-judgment denial of their motion for attorney fees and costs as prevailing defendants under 17 U.S.C. § 505. After review of the record, the arguments and the relevant law, we affirm.[1]

## I.

"Sampling," which has been common in hip-hop and rap music, typically refers to the copying of a portion of a master sound recording and using it, with or without alteration, in the making of a new musical work. *Bridgeport Music, Inc. v. Still N The Water Publ'g*, 327 F.3d 472, 475 n. 2 (6th Cir.), *cert. denied,* —— U.S. ——, 124 S.Ct. 399, 157 L.Ed.2d 279 (2003). Use of a sample from a master recording implicates two distinct copyrights: one in the musical composition and one in the sound recording itself. *Id.* at 475 n. 3. If the use of a sample would constitute infringement, permission to use the sample, or "clear-ance," must be obtained from both the composition copyright holder and the sound recording copyright holder.[2]

Bridgeport is a music publisher in the business of holding and exploiting copyrights in music compositions. Resolution of this appeal involves both Bridgeport's claim that "Eazy–Duz–It" was sampled without permission in "4 Tha E," and the effect of Bridgeport's earlier settlement of its claim that "Eazy–Duz–It" had sampled from several other Bridgeport compositions.

## A. Background Facts

"Eazy–Duz–It" was cowritten and recorded by Eric Wright, the rap artist known as Eazy–E, in 1988. The sound recording copyright was held by Ruthless Records. Ruthless Attack Muzick held 100% of the composition copyright. At all times relevant to this litigation, Songwriter Services, Inc., owned by Madeline Smith, handled Ruthless Attack Muzick's day-to-day music publishing administration and affairs.

After Eazy–E died in 1995, Antoine Carraby, the rap artist known as DJ Yella, produced a tribute album called "One Mo Nigga Ta Go." On the album was a new song called "4 Tha E," which sampled from "Eazy–Duz–It." The sample in question was the signatory phrase used by Eazy–E in which he raps, "Well, I'm Eazy–E" (Phrase). The sampled Phrase is the only portion of "Eazy–Duz–It" that is sampled in "4 Tha E." The composition "4 Tha E" was owned by DJ Yella Muzick, Kidco

---

1. No other claims or parties are at issue in this appeal. Bridgeport has settled all claims against All Nations Publishing, d/b/a All Music Nations, and Song of All Nations. Nor does Bridgeport appeal from the dismissal without prejudice of claims against Kidco Music, Koke Is It Muzik, and John Does 1–500.

   Southfield Music, Inc., was dismissed as a plaintiff after the amended complaint was filed and does not appeal.

2. When the sample is an interpolation, meaning the sound recording is not used, only the composition rights are implicated.

Music, Koke Is It Muzik, and Songs of All Nations.

In early 1996, Songwriter Services was contacted about permission to use the sampled Phrase from the composition "Eazy–Duz–It." Smith suggested a buy-out fee of $2,000 to her client, Ruthless Attack Muzick, and the offer was made "to Yella by way of Scotti Brothers." Scotti Brothers, DJ Yella's recording company, sent a check to Smith written to Ruthless Attack Muzick in the amount of $2,000. The cover letter, dated March 26, 1996, from Michelle Meena at All American Music Group, administrator for Scotti Brothers, stated:

> This check represents full and final payment for the clearance of "Eazy–Duz–It" as sampled in the YELLA song entitled "4 Tha E." This payment is made on a flat-fee buy-out basis for the world in perpetuity covering all recorded formats, including but not limited to cassette, CD, vinyl, and promotional video.

A copy of that letter was also sent to Antoine Carraby (DJ Yella). The description on the check itself read: "SAMPLE CLEARANCE FOR YELLA." Smith mailed the check to a bank for deposit in the account of Ruthless Attack Muzick. The accompanying letter identified the check "as payment against a sample usage."

No other correspondence or documentation could be located concerning this clearance. Nonetheless, Smith attested that she had consented, on behalf of Ruthless Attack Muzick, "to the use of the musical composition 'Eazy–Duz–It' in the musical composition '4 Tha E.'" The tribute album was released on March 26, 1996. In June 1997, Songs of Universal acquired the

Songs of All Nations' interest in "4 Tha E.'"[3]

Bridgeport's interest in "Eazy–Duz–It" arises out of its earlier claim that "Eazy–Duz–It" had infringed other Bridgeport compositions. Specifically, in October 1997, Bridgeport notified Smith that it believed Ruthless Attack Muzick's composition "Eazy–Duz–It" sampled Bridgeport's composition "Baby, Let Me Take You in My Arms" without permission. After further investigation, Bridgeport also claimed that "Eazy–Duz–It" sampled three other compositions owned by Bridgeport: "Get Off Your Ass and Jam," "A Joyful Process," and "Bootzilla."

These claims of unauthorized sampling were settled through a Release and Agreement entered into on December 22, 1998. Under that agreement, Ruthless Attack Muzick granted Bridgeport a 40% ownership interest in the composition "Eazy–Duz–It" and Bridgeport granted Ruthless Attack Muzick and its licensees permission to use the samples as part of the composition "Eazy–Duz–It" and to reproduce, distribute and otherwise exploit the sample as part of the composition in "all media, including without limitation all record formats, whether now known or hereafter developed, throughout the world in perpetuity." At the time, Bridgeport was not aware of the use or the clearance for use of the Phrase.

In December 1999, Bridgeport wrote to Smith, Yella Muzick, and Songs of Universal claiming that the composition "4 Tha E" sampled "Eazy–Duz–It" without permission. Bridgeport demanded a 50% ownership interest in "4 Tha E" and asserted that the unauthorized sampling deprived defendants of any interest in the

---

**3.** It appears from the credits on the album "One Mo Nigga Ta Go" that separate clearance for use of the sample from the sound recording "Eazy–Duz–It" was obtained from Priority Records.

composition "4 Tha E." No one responded to that letter.

## B. Procedural Facts

These claims were first asserted in a complaint filed on May 4, 2001, by Bridgeport and its sister companies alleging nearly 500 counts against approximately 800 defendants for copyright infringement and other state law claims relating to music sampling. After that original complaint was severed into 476 separate actions, an amended complaint in this case was filed on September 28, 2001.

In June 2002, after an opportunity for discovery, Yella Muzick and Songs of Universal moved for summary judgment, arguing that the Phrase was not copyrightable, that the alleged use was *de minimis*, and that Bridgeport's claims were barred by the statute of limitations. On July 25, 2002, defendants' counsel was advised by counsel for Madeline Smith that Ruthless Attack Muzick had granted a prior license for use of the sampled Phrase from "Eazy–Duz–It" in "4 Tha E." Defendants immediately provided a copy of the check and cover letter to plaintiff.

After this revelation, defendants' counsel wrote on July 30, 2002, urging Bridgeport to dismiss the case with prejudice, advising that they would raise the license in a supplement to the pending motion for summary judgment, and reserving the right to seek an award of attorney fees and costs. On August 12, 2002, defendants obtained leave to file a second motion for summary judgment based on the license. Offers of settlement were exchanged over the next two weeks, but no agreement was reached. Bridgeport withdrew its offer on August 29, 2002, and the parties proceeded to prepare for trial.

On November 7, 2002, four days before the trial was scheduled to commence, the district court granted summary judgment to defendants on the grounds that Bridgeport's claims were barred by the sample license granted by Ruthless Attack Muzick. Bridgeport appealed. In a post-judgment motion, Yella Muzick and Songs of Universal sought an award of $297,292.60 in attorney fees and $16,119.22 in nontaxable costs. The district court denied that motion on April 30, 2003, and defendants appealed.

## II.

We review the district court's grant of summary judgment *de novo*. *Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir. 1997). Summary judgment is appropriate when there are no issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). In deciding a motion for summary judgment, the court must view all factual evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Bridgeport contends that the district court erred in finding there was no genuine issue of fact on the existence, scope, or validity of the license granted by Ruthless Attack Muzick for use of the sampled Phrase from "Eazy–Duz–It" in "4 Tha E."

Taking the last first, Bridgeport argues that any license Ruthless Attack Muzick may have granted was invalid because the composition "Eazy–Duz–It" contained samples from four Bridgeport compositions without permission and was therefore an infringing "derivative work" for which

Ruthless Attack Muzick could not obtain copyright protection. We need not decide whether the composition "Eazy–Duz–It" would constitute a derivative work, or what effect that would have on its copyright protection, because Bridgeport waived any possible argument about the authority of Ruthless Attack Muzick to grant a sample use license by settling its infringement claims through the Release and Agreement.

First and foremost, the Release and Agreement explicitly recognized Ruthless Attack Muzick's prior ownership of the musical composition "Eazy–Duz–It." *See Beer Nuts, Inc. v. King Nut Co.,* 477 F.2d 326, 327–28 (6th Cir.1973) (recognition in settlement agreement that one party owned trademark estopped other party from later contesting validity of ownership). Consistent with that acknowledgment, Ruthless Attack Muzick granted Bridgeport a 40% ownership interest in the composition "Eazy–Duz–It." In turn, Bridgeport, as owner of the four sampled music compositions, granted Ruthless Attack Muzick, its licensees, and assigns the right to embody the samples in the "Eazy–Duz–It" composition. Finally, Bridgeport expressly released and discharged Ruthless Attack Muzick, its representatives, licensees, successors, and assigns, from all claims Bridgeport may have regarding the composition "Eazy–Duz–It." By settling its claims under these terms, Bridgeport may not contest Ruthless Attack Muzick's prior authority to grant a license to use the sampled Phrase from "Eazy–Duz–It" in "4 Tha E."

The question then is whether there was a question of fact concerning the existence and scope of the license. In the context of music sampling, clearance from a music composition copyright holder generally takes one of three forms: a flat-fee buy out agreement under which no future pay-

ments are owed; an adjusted mechanical license fee requiring payment of a sum for each record sold; or a co-publishing arrangement under which the copyright owner of the sampled composition shares an interest in the copyright of the new work. *See* Jeffrey Brown, *They Don't Make Music The Way They Used To: The Legal Implications Of Sampling In Contemporary Music,* 1992 Wis. L. Rev.1941, 1956–57. A nonexclusive license need not be in writing, but may be granted orally or by implication. *Johnson v. Jones,* 149 F.3d 494 (6th Cir.1998). A license from a co-owner of a copyrighted work is a defense to a claim of copyright infringement brought by any other co-owner. *McKay v. Columbia Broad. Sys., Inc.,* 324 F.2d 762, 763 (2d Cir.1963); *see also Oddo v. Ries,* 743 F.2d 630, 633 (9th Cir.1984) (each co-owner of a copyrighted work has an independent right to use or license the use of a copyright).

■ Bridgeport argues that conflicts in Smith's testimony created a question of fact as to whether there was a license at all. On the contrary, the fact that Smith referred to the March 26, 1996 letter sent on behalf of Scotti Brothers as a "transmittal letter," as opposed to a license, does not undermine her testimony that there was a license. Nor do we find any basis in Smith's deposition testimony for Bridgeport's claim that she admitted she could not recall the terms of the buy out on behalf of Ruthless Attack Muzick. While Smith did acknowledge that she had not located other correspondence concerning the clearance, she unequivocally testified that the terms of the buy out license were reflected in that letter:

[PLAINTIFF'S COUNSEL]: As you sit here today, you don't recall any other terms other than what's reflected in Exhibit 4 [the March 26, 1996, letter]?

[DEFENDANTS' COUNSEL]: Okay. I think this is the third time asking the exact same question.

[SMITH]: I don't know what you're heading at. These are what the terms were. This is a flat fee buy out.

[PLAINTIFF'S COUNSEL]: Is this the whole deal?

[DEFENDANTS' COUNSEL]: Objection.

[SMITH]: Yes.

■ Bridgeport also argues that Ruthless Attack Muzick only authorized the use of the Phrase in the sound recording of "4 Tha E" but not in the composition "4 Tha E." In particular, Bridgeport points to the language in the March 26, 1996 letter stating that the flat fee covered "all *recorded formats,* including but not limited to cassette, CD, vinyl, and promotional video." (Emphasis added.) The inference Bridgeport would have us draw is undermined by the fact that Bridgeport used similar language in the Release and Agreement with Ruthless Attack Muzick granting permission to use the four Bridgeport samples as part of the *composition* "Eazy–Duz–It" in "all media, including without limitation all recorded formats, whether now known or hereafter developed, throughout the world in perpetuity."

In addition, the March 26, 1996 letter and check indicated that sample clearance was being sought for "Yella" for use of the sample in the song "4 Tha E." This supports Smith's uncontradicted statement that she consented, on behalf of Ruthless Attack Muzick, to use of the Phrase from the composition "Eazy–Duz–It" in the Yella *composition* "4 Tha E." This prior permission, granted by an owner of the copyright in "Eazy–Duz–It," bars Bridgeport's claim that defendants infringed "Eazy–Duz–It" by including the Phrase in the composition "4 Tha E."

■ The district court also found that Bridgeport's claims of infringement were barred by the license, even if it was only granted to Scotti Brothers for use of the sampled Phrase in the sound recording "4 Tha E," because the infringing acts upon which Bridgeport rested its claim, as well as the only evidence of infringing acts in the record, were the release, distribution, and sale of the sound recording "4 Tha E." Bridgeport makes no argument on appeal nor points to any evidence in the record to refute this finding.

Instead, Bridgeport reiterates that it is not suing Scotti Brothers, the recording label, but is suing the defendant publishers for use of the Phrase in the *composition* "4 Tha E." Bridgeport argues that the failure to get permission to use the sampled Phrase in the *composition* gives rise to an ownership interest in the composition "4 Tha E" and, in turn, the right to insist on royalties from Scotti Brothers on the sale of the sound recording "4 Tha E." The flaw in this argument is that, even accepting this theory, the *infringement* asserted by Bridgeport was the use of the sampled Phrase in the recording "4 Tha E" and Bridgeport cannot avoid the prior flat-fee license granting permission to use the Phrase in "4 Tha E." As such, even if we had not concluded that the license granted permission to use the Phrase in the composition "4 Tha E," summary judgment would still have been proper.[4]

4. Defendants argue in the alternative that we may affirm on grounds not reached by the district court. Specifically, defendants contend that the Phrase was not sufficiently original to be entitled to copyright protection and that the use of the Phrase did not constitute infringement because it was a *de minimis* use. Because we affirm the grant of summary judgment on the license, we need not address these claims.

### III.

Having affirmed the district court's decision on the merits, we turn to defendants' appeal from the denial of their motion for an award of attorney fees and costs as prevailing defendants. The Copyright Act provides that the court in its discretion may allow the award of costs and reasonable attorney fees to the prevailing party in civil suits under the Act. 17 U.S.C. § 505.[5] Our review of such an award is for abuse of discretion. *Coles v. Wonder*, 283 F.3d 798, 804 (6th Cir.2002) (affirming award to prevailing defendant); *Murray Hill Publ'ns, Inc. v. ABC Communications*, 264 F.3d 622, 639 (6th Cir. 2001) (reversing award to prevailing defendant). A district court abuses its discretion when it relies on clearly erroneous factual findings, improperly applies the law, or uses an erroneous legal standard. *Adcock–Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir.2000).

The discretion to grant attorney fees in copyright infringement cases is to be exercised in an evenhanded manner with respect to prevailing plaintiffs and prevailing defendants, and in a manner consistent with the primary purposes of the Copyright Act. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994). Several nonexclusive factors may be considered in making awards to prevailing parties, as long as the factors are "faithful to the purposes of the Copyright Act and are applied to prevailing plaintiffs and defendants in an evenhanded manner." *Id.* at 534 n. 19. Those factors include "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* (quoting *Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 156 (3d Cir.1986)).

Defendants argue first that the district court abused its discretion by basing its decision on the erroneous finding that defendants were solely responsible for the late discovery of the license. Late discovery of the license was appropriately considered in this case because it was relevant to motivation and objective reasonableness with respect to Bridgeport and the defendants.[6] Defendants should presumably have had access to records concerning the clearance records of "4 Tha E." Yet, both Bridgeport and Songs of Universal acquired their interests in the composition "Eazy–Duz–It" after the license had been granted. Moreover, there is no indication in this record that information about the license was anywhere but in Smith's files at Songwriter Services, and Smith did not reveal the license to the defendants until after the close of discovery. While neither plaintiff nor defendants seem to be "at fault" for the late discovery, it was not an abuse of discretion to conclude that the failure to discover the license, at least under the facts of this case, did not weigh in favor of an award of fees to the defendants.

The district court found that Bridgeport's decision to continue to litigate these

---

5. Section 505 states: "In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505.

6. In fact, defendants halfheartedly argue that it was objectively unreasonable before the license was discovered for Bridgeport to pursue its claim because defendants had earned only $2,000 in royalties from "4 Tha E." There is no defense or exception to liability under the Copyright Act because an infringement is unprofitable. *See Repp v. Webber*, 914 F.Supp. 80, 84 (S.D.N.Y.1996).

claims after discovery of the license weighed in favor of an award. As mentioned earlier, discovery of the license spurred a flurry of unsuccessful settlement discussions. First, upon learning of the license at the end of July 2002, defendant demanded dismissal of the case and reserved the right to seek attorney fees. Between August 12, 2002, and August 29, 2002, several offers were exchanged. Bridgeport offered to dismiss the action in exchange for 20% ownership in the composition "4 Tha E." But, the next day, Bridgeport advised defendants that it was "willing to settle this matter by dismissing the action with each side bearing its own costs."

In response, defendants proposed that Bridgeport dismiss its claims and agree to credit defendants with $150,000 "as an offset to any judgment Bridgeport subsequently may obtain against Defendants (in any case) or as a credit in any global or individual settlement subsequently reached between the parties."[7] Bridgeport rejected this offer a few days later and renewed its "walk-away" offer. Defendants, in turn, again rejected the walk-away offer and renewed the offer that included the $150,000 credit. Finally, Bridgeport orally withdrew its offer of settlement on the record during a deposition on August 29, 2002, and no further negotiations followed. The parties incurred significant additional expenses in preparing for trial before the decision granting summary judgment was entered on November 7, 2002.

Defendants accuse the district court of denying them attorney fees based solely on their refusal to settle with Bridgeport. *See Diamond Star Bldg. Corp. v. Freed*, 30 F.3d 503, 505 (4th Cir.1994) (improper to consider a defendant's refusal to settle a plaintiff's frivolous action as grounds for denying attorney fees).[8] Defendants, however, misconstrue the district court's consideration of the settlement discussions in this case. First, it is clear that the court was responding to arguments made in connection with the defendants' position that it was objectively unreasonable for Bridgeport to continue the litigation once the license had been discovered. The record shows that the letters documenting the settlement discussions were submitted in support of defendants' motion for attorney fees and costs.

Second, in addressing those arguments, the district court found that the defendants' opening offer was not unreasonable but expressed the belief that "both sides could have worked harder to reach a settlement." *Bridgeport*, 261 F.Supp.2d at 970. In other words, the conduct of the settlement negotiations did not weigh in favor of or against an award of attorney fees and costs. In fact, the district court's decision reflects the recognition that even the objective unreasonableness of a claim does not automatically mandate an award under § 505. It is but one of several nonexclusive factors that may be considered. As the Court in *Fogerty* stated: "'There is no precise rule or formula in making these determinations,' but instead equitable discretion should be exercised 'in light of the considerations we have identified.'" *Fogerty*, 510 U.S. at 534 (citation omitted). We can find no abuse of discretion in the district court's determination that the goals of the Copyright Act would

---

**7.** Defendants state that they incurred $177,975 in attorney fees attributable to this case before the license was discovered.

**8.** There may be circumstances where a party's conduct during settlement negotiations is relevant to the district court's consideration of the motivation factor. *See Coles v. Wonder*, 283 F.3d 798, 804 (6th Cir.2002); *Harris Custom Builders, Inc. v. Hoffmeyer*, 140 F.3d 728, 731 (7th Cir.1998).

not be furthered by an award of attorney fees in this case.

**AFFIRMED.**